UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILLIAM BERRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>L.S. PROPERTY MANAGEMENT LLC and DOES 1–10,<br><br>　　　　　Defendants. | Case No.: CV 20-00549-CJC(AFMx)<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [Dkt. 16]** |

## I.  INTRODUCTION & BACKGROUND

On January 17, 2020, Plaintiff William Berry filed this action against Defendant L.S. Property Management LLC and unnamed Does, alleging violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"). (Dkt. 1 [Complaint, hereinafter "Compl."].)  Plaintiff had his toes amputated because of

-1-

complications from diabetes and has difficulty walking. (*Id.* ¶ 1.) The State of California issued him a permanent Disabled Permanent Person Parking Placard. (*Id.*) Plaintiff alleges that he visited a grocery store located at 10500 South Prairie Avenue in Inglewood, California—Mi Mercadito—in February, March, and June 2019. (*Id.* ¶ 12.) Defendant owns the property where the grocery store is located. (Dkt. 16-5 Ex. A [Property Deed].) Plaintiff alleges that, although the store offers designated parking spaces for disabled persons, these spaces do not comply with ADA regulations or the latest California Building Codes ("2010 CBC Code"). (Compl. ¶¶ 15–18.) Specifically, Plaintiff alleges that the parking spaces are improperly signed and that the path from the designated parking spaces to the market are improperly uneven, narrow, and steep. (*Id.* ¶ 20.) Plaintiff also alleges that the grocery store does not offer accessible seating, sales counters, and paths of travel. (*Id.*)

Plaintiff initially sought injunctive relief under the ADA and statutory damages under the Unruh Act. (*See id.*) However, the Court declined to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and dismissed it without prejudice for him to assert in state court. (*See* Dkt. 11.) Plaintiff's sole remaining claim is for injunctive relief under the ADA. (*See id.*)

Defendant failed to appear in this action and the clerk entered default against it. (Dkt. 14.) Now before the Court is Plaintiff's application for default judgment. (Dkt. 16 [Application]; Dkt. 16-1 [Memorandum in Support, hereinafter "App."].)[1] For the following reasons, the application is **GRANTED**.[2]

---

[1] Although the Complaint includes unnamed Doe Defendants, Plaintiff has not identified any of these Defendants and now seeks final judgment in this action. Plaintiff has therefore indicated that he does not intend to continue litigating this case against the unnamed Defendants. (*See generally* App.)

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 11, 2020, at 1:30 p.m. is hereby vacated and off calendar.

## II. ANALYSIS

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment against a defendant, a court must first determine whether it has jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Courts must also determine whether there was sufficient service of process on the party against whom default judgment is requested. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992).

The Court has federal question jurisdiction over Plaintiff's ADA claim, his sole remaining cause of action. *See* 42 U.S.C. § 1201. The Court has personal jurisdiction over the Defendant because it owns the property at issue, which is located in this judicial district. There has also been adequate service of process pursuant to Federal Rule of Civil Procedure 4(e)(1), as Defendant was served through its authorized agent in compliance with California law. *See* Cal. Code Civ. Pro. § 415.20; (Dkt. 8).

### B. Procedural Requirements for Default Judgment

Rule 55(b)(2) of the Federal Rules of Civil Procedure and this Court's Local Rule 55-1 require that applications for default judgment set forth the following information: "(1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA Mc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

Here, the procedural requirements for default judgment have been satisfied: (1) the clerk entered default against Defendant on March 13, 2020, (Dkt. 14); (2) default was entered as to the Complaint, (Dkt. 16-5 [Declaration of Anoush Hakimi, hereinafter "Hakimi Decl."] ¶ 5); (3) Defendant is not an infant or an incompetent person, (*id.* ¶ 2); and (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply, (*id.*). The fifth requirement, notice of the application, is not required because Defendant has failed to appear in this action altogether. Fed. R. Civ. P. 55(b)(2). However, Plaintiff has nevertheless served Defendant with a copy of this application. (*See* Hakimi Decl. ¶ 6.)

### C. Merits of the Motion for Default Judgment

After entry of default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55(a)–(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors articulated in *Eitel v. McCool*, 782 F.2d 1470, (9th Cir. 1986), in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471–72. Because default has been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, the *Eitel* factors weigh in favor of a default judgment.

//

### 1. Possibility of Prejudice to the Plaintiff

The first *Eitel* factor requires the Court to consider the harm to the plaintiff if the Court does not grant default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor weighs in Plaintiff's favor because, without a default judgment, he would lack any other recourse for recovery since Defendant has failed to appear or to defend this suit.

### 2. & 3. The Merits of the Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." *Phillip Morris*, 219 F.R.D. at 499. The Court finds that the Complaint adequately states a claim for violation of the ADA.

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities . . . or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily available." *Id.* § 12182(b)(2)(A)(iv). To prevail on such a discrimination claim, "the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

The Complaint alleges that Plaintiff had his toes amputated and has difficulty walking. (Compl. ¶ 1.) This allegation sufficiently sets forth a disability, which includes

"a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102. The Complaint also alleges that Defendant owns the property at issue and either owns or leases a grocery store open to the public. (Compl. ¶¶ 2–3, 6.) This adequately establishes that Defendant "owns, leases (or leases to), or operates" a place of public accommodation. *See* 42 U.S.C. § 12182(a); *see also* 42 U.S.C. § 12181(7)(E) (defining public accommodations to include grocery stores).

Finally, Plaintiff alleges that upon visiting the grocery store, he was discriminated against because the reserved parking spots were improperly spaced and signed and the path to the market was narrow, uneven, and steep—all in violation of ADA regulations. (*See* Compl. ¶ 20; App. at 6–11.) Plaintiff also alleges that the grocery store does not have accessible aisles and check stands. (*See* Compl. ¶ 20; App. at 6–11.) These violations constitute architectural barriers which precluded full and equal enjoyment of the goods and services provided by a place of public accommodation. *See* 42 U.S.C. § 12182; 36 C.F.R. § 1191, Appendix D § 502.3.3. Because Plaintiff has sufficiently pled his ADA claim, the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 4. The Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of [Defendant's] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Because the Court has dismissed Plaintiff's Unruh Act claim, he does not seek damages. Instead, he requests injunctive relief and $5,983.45 in attorneys' fees and costs. An award of $5,983.45 is relatively low for a default judgment case. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (explaining that an award of $13,739.20 was reasonable because it was a low amount and was comparable to

awards in other cases granting default judgment for violations of the ADA and the Unruh Act). The low sum of money at stake, when viewed in light of the alleged ADA violations, weighs in favor of default.

### 5. & 6. The Possibility of a Dispute Concerning Material Facts and Whether the Default was Due to Excusable Neglect

The fifth and sixth *Eitel* factors require the Court to determine whether it is likely that there would be a dispute as to material facts and whether Defendant's failure to litigate is due to excusable neglect. Where a plaintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is low. *See Landstar Ranger, Inc. v. Parth Entm't, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). There is also no indication that Defendant's default was due to excusable neglect, because it failed to appear altogether despite being served with the Complaint. Moreover, Plaintiff has submitted affidavits and photographic evidence to support the allegations in the Complaint. (*See* Dkts. 16-2–16-4.) Both of these factors weigh in favor of default.

### 7. The Public Policy Favoring Decisions on the Merits

Because public policy dictates that courts prefer to rule on the merits, this factor will always weigh against granting a motion for default judgment. Nonetheless, Defendant's choice not to defend itself renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc.*, 238 F. Supp. 2d at 1177. Since the other *Eitel* factors all weigh in favor of granting default judgment here, the Court will exercise its discretion to grant Plaintiff's motion for default judgment.

//

### D. Relief Sought

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted. Plaintiff carries the burden of proving his damages and requests for other relief. *See Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Here, Plaintiff seeks a permanent injunction and attorneys' fees and costs.

First, Plaintiff seeks an injunction directing Defendant to provide accessible parking spaces, accessible paths of travel, accessible circulation aisles and accessible check stands at the grocery store. Where, as here, the injunction is "sought to prevent the violation of a federal statute which specifically provides for injunctive relief," the standard requirements for equitable relief do not need to be satisfied. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175–76 (9th Cir. 2010) (internal quotation marks and citation omitted). The ADA permits injunctive relief to "alter facilities to make [them] readily accessible." 42 U.S.C. §12188(a)(2). Whether a facility is "readily accessible" is defined, in part, by the ADA Accessibility Guidelines ("ADAAG"). *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). As discussed above, Plaintiff has stated a viable ADA claim through his assertions that the store's parking spaces, paths of travel, and sales counters violate the ADAAG. (*See* App. at 11–20.) Injunctive relief compelling Defendant to remove the barriers to comply with the ADAAG is therefore appropriate. *See Vogel*, 992 F. Supp. 2d at 1015.

Finally, Plaintiff seeks $5,396 in attorneys' fees and $587.45 in litigation costs.[3] (Hakimi Decl. Ex. B.) When a court grants a motion for default judgment, and a statute

---

[3] Counsel's arithmetic leaves something to be desired. He seeks $5,396 in fees and $587.95 in expenses, but calculates the total as $5,983.45. (Hakimi Decl. Ex. B.) Instead of launching an inquiry into the missing fifty cents, the Court will assume that counsel seeks only $587.45 in expenses.

provides for reasonable attorneys' fees, in most cases, the court will calculate the fees in accordance with the fee schedule provided by Local Rule 55-3. However, an attorney may request that the court fix a fee in excess of the schedule. According to a recent Ninth Circuit decision, upon such a request in ADA cases, the court is obliged to calculate a reasonable fee using the lodestar approach rather than the local fee schedule. *See Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citation and quotations omitted). The party seeking attorneys' fees bears the burden of "submitting evidence of the hours worked," the rate charged, and that "the rate charged is in line with the prevailing marking rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation omitted).

Plaintiff's fee request is based upon the following rates: $495 per hour for attorney Anoush Hakimi and $495 per hour for attorney P. Shahriari. (Hakimi Decl. ¶¶ 8–9.) Mr. Hakimi and Mr. Shahriari have been practicing law since 2003 and 2005 respectively. (*Id.*) "In establishing the reasonable hourly rate, the Court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015). These requested rates are consistent with hourly rates that have been approved for attorneys with similar experience and qualifications in ADA cases and also appear reasonable in light of counsel's experience. *See, e.g.*, *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1278 (N.D. Cal. 2014) (awarding $550 per hour to attorney with over 20 years of experience in a disability access case).

Having determined the reasonableness of the rates, the Court will next address whether the time the attorneys spent on this case was similarly reasonable. Plaintiff's counsel has submitted an affidavit with an itemized billing statement that provides a detailed breakdown of the 10.9 hours that the two attorneys spent on this case. (Hakimi Decl. Ex. B.) Reasonable hours expended on a case are hours that are not "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted). Having reviewed the billing records, the Court finds that the number of hours spent on this case was reasonable. *See Arroyo v. Doublz Par, Inc.*, 2019 WL 6792802, at *5 (C.D. Cal. July 29, 2019) (spending 9.9 hours to obtain a default judgment in a similar ADA case was reasonable).

Plaintiff also seeks to recover $587.45 in costs, including $400 for the filing of the Complaint, $90 for investigator fees, and $97.95 for service fees. (Hakimi Decl. Ex. B.) The Court finds these costs to be reasonable and awards Plaintiff $587.45 in costs.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED**. Plaintiff is awarded (1) injunctive relief requiring Defendant to create ADA compliant parking spaces, paths of travel, and sales counter, and (2) attorneys' fees and costs of $5,983.45. A judgment consistent with this Order will be issued.

DATED: April 30, 2020

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE